IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02836-NRN

M.D.B.,[1]

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,

Defendant.

---

**OPINION AND ORDER**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

The government determined that Plaintiff M.D.B. was not disabled for purposes of the Social Security Act. AR[2] 55–56. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). ECF No. 9.

## Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence. *See Krauser v.*

---

[1] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. ECF No. 10.

*Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011); *Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Parker v. Comm'r, SSA*, 772 F. App'x 613, 617 (10th Cir. 2019) ("If [plaintiff] is right about the legal error, we must reverse even if the agency's findings are otherwise supported by substantial evidence.").

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes a mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). However, it must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d, 1067, 1070 (10th Cir. 2007).

If the correct legal standards were applied and substantial evidence supports the findings of the Commissioner, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for

reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## **Background**

On April 25, 2024, Plaintiff applied for Disability Income Benefits under Title II of the Social Security Act, alleging disability beginning December 20, 2016. AR 231–37; 270. Plaintiff's claim was initially denied on May 28, 2024, AR 139–45, and again, upon reconsideration on August 5, 2024. AR 146–153. On August 28, 2024, Plaintiff requested a hearing with an ALJ and such hearing was held on April 23, 2025. AR 61–92. After the hearing, ALJ Diane S. Davis issued an unfavorable decision on May 30, 2025. AR 41–60.

At the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Plaintiff had the following severe impairments: depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder ("PTSD"). AR 47.

The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

---

[3] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

listed impairments in the regulations (specifically listings 12.04, 12.06, and 12.15). AR 48.

The ALJ concluded that Plaintiff had mild limitations in two of the four areas of functioning, known as the “paragraph B” criteria, and moderate limitations in the other two areas.[4] AR 48–50. Because the mental impairments must result in at least one extreme or two marked limitations in a broad area of mental functioning to satisfy the paragraph B criteria, the ALJ determined that the severity of the Plaintiff’s mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). *Id.*

After concluding that Plaintiff did not have an impairment or combination of impairments that met the severity of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity (“RFC”) to

> perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant can understand, remember and carry out more than simple but less than complex tasks and instructions that can be learned and mastered in up to six months’ time or less. The work involves occasional interaction with supervisors, coworkers, and with the general public. At such levels, the claimant can maintain concentration, persistence or pace throughout a normal workday and workweek, make routine work-related decisions, plan and set goals, adapt to routine workplace changes, travel, and recognize and avoid ordinary workplace hazards.

AR 50.

---

[4] The four areas of mental functioning are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.

Next, the ALJ noted that Plaintiff has past relevant work as a landscape laborer, that he had worked at this job in the past five years, and that he appears to have earnings in the past five years that rise to the level of substantial gainful activity. AR 54. At the hearing, the vocational expert testified that the demands of the landscape laborer job do not exceed the assessed residual functional capacity. Therefore, the ALJ found that Plaintiff is able to perform that job as generally performed. *Id.*

The ALJ went on to note that, even if Plaintiff's past work as a landscape laborer does not qualify as past relevant work, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform," including warehouseman, hand packager, and laundry worker. *Id.* Accordingly, Plaintiff was deemed not to have been under a disability from December 16, 2016, the alleged onset date, through May 30, 2025, the date of the decision. *Id.*

On June 28, 2025, Plaintiff requested the Appeals Council review the ALJ's unfavorable decision. AR 227. The Appeals Council denied Plaintiff's request for review on July 11, 2025, making the ALJ's decision the final decision of the Commissioner. AR 1–6. Plaintiff then filed the instant suit.

**<u>Analysis</u>**

Plaintiff raises two issues on appeal: (1) "The RFC is not supported by substantial evidence, because the ALJ failed to develop the record and should have ordered a consultative examination."; and (2) "The ALJ improperly evaluated Plaintiff's Department of Veterans Affairs disability rating." ECF No. 11 at 6–8.

**a. Need for Consultive Examination not Established**

Plaintiff argues that his self-reporting of a new disabling condition in June 2024 (increased lower back pain that radiates and causes numbness, tingling, and decreased range of motion), *see* AR 290, triggered the ALJ's duty to further develop the record concerning the alleged physical impairment. ECF No. 11 at 6. He argues that Dr. Suyeishi, a state agency medical consultant, noted that records show that Plaintiff alleged he injured his back while in the army and continued to experience problems even after his discharge, and that records show Plaintiff continues to receive medication to treat symptoms related to his back impairment. Plaintiff further argues that Dr. Suyeishi acknowledged that Plaintiff reported a new disabling condition after the initial denial. Plaintiff contends that "[b]ecause no state agency medical consultant opined as to Plaintiff's physical RFC, and records exist related to his back impairment, along with the report of a new disabling condition prior to the ALJ's decision, the ALJ should have further developed the record on Plaintiff's physical impairments and corresponding limitations by ordering a consultative examination." *Id.* at 8. The Court is not persuaded.

An "ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997). The relevant period in this case was from October 2023 through the date of the ALJ's decision. The record shows that in April 2023, Plaintiff reported having "fair health" and did not make any physical complaints. AR 352–53. No abnormal physical findings or physical diagnoses were noted. AR 350–53. The next time he saw his

provider at the VA was January 2024. AR 345. He again had no physical complaints. His physical examination was fully normal, and no physical conditions were diagnosed. AR 346. Again, in March 2024, Plaintiff made no complaints about his back or other physical issues, had a fully normal physical examination, and no physical impairments were diagnosed. AR 338–39. The same went for his check-ins in April 2024 and May 2024. AR 333–36.

In August 2024, Plaintiff wanted Patricia Badoud, NP, to complete VA paperwork for Aid and Attendance (benefits for home care). AR 584. Nurse Badoud noted that she was not sure how she would be able to complete such paperwork as Plaintiff had only mental health diagnoses. *Id.* When Plaintiff returned in September 2024, he again wanted paperwork claiming he needed money, AR 577, and for the first time stated his back hurt, AR 578. Plaintiff claimed extensive difficulties with bathing, dressing, grooming, toileting, and claimed to need to use a cane. AR 571–72. Nurse Badoud noted that he was looking for work in May and asked if anything had happened to worsen his physical condition, and Plaintiff refused to answer. AR 582. She noted she did “not feel he is being entirely honest.” *Id.* She documented a normal physical examination. *Id.* During his visit in December 2024, Plaintiff had no back or other physical complaints. AR 561–62. No examination was performed as it was a televisit, but Nurse Badoud noted she did not detect any acute distress. AR 563.

The ALJ took all this history into consideration. With respect to Plaintiff’s alleged back pain, the ALJ noted,

> As to the claimant’s back, the record reflects, at best, a historical diagnosis. The record does not reflect any complaints or treatment during the period at issue in this case. Despite the claimant’s testimony of his back seizing and dropping him, with radiating symptoms from the buttocks to the feet,

> the record reflects no complaints to providers. More recently in phone visit with primary care provider, NP Badoud, on December 30, 2024, she noted the claimant's back pain was stable. There was no exam, given the phone visit, but NP Badoud noted that she was not detecting, nor was the claimant endorsing, any acute distress (C3F/12-14). Those notes do not reflect any of the complaints that the claimant alleged at hearing.

AR 51. The ALJ also stated that "[t]he record overall provides no support for any severe physical issue. At best, the claimant has attended annual visits with primary care just to stay active in the VA system." *Id*.

In summary, as the ALJ discussed, Plaintiff made almost no complaints about his back during the relevant period; examinations were normal and did not reflect any back abnormalities. No back impairments were diagnosed by any provider from his examinations. The only time Plaintiff mentioned having back pain was when he was seeking additional benefits, and his provider specifically stated she believed he was being dishonest.

Moreover, in his records, Dr. Suyeishi noted many inconsistencies between Plaintiff's statements about the intensity, persistence, and limiting effects of his back impairment and what he actually appeared to be capable of. Dr. Suyeishi wrote,

> Although claimant reported he was experiencing pain at a 10 on a scale of 1 to 10 all the time, the attending physician noted claimant did not appear to be in excruciating pain . . . . Although claimant walked with a cane in his right hand, there was no apparent weight placed on the cane. The physician noted that during examination, claimant reported he could only provide limited degrees of range of motion of the back: however, he was observed in the waiting room prior to examination to having greater degrees of flexibility in the lower back . . . . Further, the physician noted claimant demonstrated a difference in behavior during the examination than he did in the waiting room.

AR 158.

As the Commissioner correctly observes, the only evidence offered regarding Plaintiff's back impairment is Plaintiff's own subjective complaints. The ALJ specifically found that Plaintiff's subjective complaints were not an accurate reflection of his physical abilities and thus reasonably chose to rely more on the medical evidence. *See* AR 52. "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment." *Hawkins*, 113 F.3d at 1167. Therefore, the Court finds that Plaintiff has failed to demonstrate that the need for a consultative examination was clearly established in the record.

Plaintiff cites to *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996), for the proposition that his reporting back pain to the agency in June 2024 triggered the ALJ's duty to develop the record. However, in *Carter*, the Tenth Circuit found that there was evidence of a psychological diagnosis, and "pertinent, available medical records" existed but were not in the record, all of which triggered the ALJ's duty to further develop the record. Here, there is no evidence that the ALJ disregarded pertinent and available medical records that were known to her. Further, the court did not specifically order a consultive examination, only that the ALJ needed to further develop the record. Thus, *Carter* does not support Plaintiff's position.

Importantly, Plaintiff's counsel had no objections to the record at the hearing and stated she believed the record was complete. AR 66. Nor did Plaintiff's counsel at any point request a consultative examination. As Judge Nina Y. Wang recently explained in *S.E.S. v. Bisignano*, No. 24-cv-03178-NYW, 2026 WL 1090953 (D. Colo. Apr. 22, 2026),

> Plaintiff is correct that an ALJ has a duty to exercise "reasonable good judgment" to "fully and fairly develop[ ] the record as to material issues." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (quotation omitted). When a party is represented, however, "the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Id.* at 1167. Thus, if counsel fails to request a consultative examination, the ALJ has no duty to order one unless the need for such examination is "clearly established in the record." *Id.* at 1168. A consultative examination may be required where the medical evidence is conflicting or inconclusive, or where additional tests are needed to explain a diagnosis. *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) (citing *Hawkins*, 113 F.3d at 1164) (further citations omitted). "But there is no need for a consultative examination when the ALJ has enough information to make a disability determination." *Id.* (citing *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008)). And if the need for a consultative examination is not clearly established, the ALJ's duty to develop the record "does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008).

*Id.* at *3.

As previously stated, the need for a consultive examination was not clearly established in the record. Thus, the fact that no consultative exam was ordered may be attributed to Plaintiff's counsel's failure to request one prior to the ALJ issuing her decision.

In conclusion, the Court finds that because the medical records and hearing testimony provided substantial evidence to support the ALJ's conclusion that claimant does not suffer from a severe physical impairment, the ALJ did not err by failing to order a consultative examination.

**b. ALJ Adequately Considered Evidence Underlying the Department of Veterans Affairs Disability Rating**

In her decision, the ALJ noted that Plaintiff's VA disability rating is 100 percent for PTSD. AR 53. However, she noted that "that rating is assessed by an agency other than the Social Security Administration and under rules different from those of the Social

Security Administration's disability program. Therefore, the VA disability rating is inherently neither valuable nor persuasive, and there is no need to weigh it . . . ." *Id.*

In his reply brief, Plaintiff concedes that "for applications filed on or after March 27, 2017, the ALJ is not required to provide any analysis about a VA rating decision." ECF No. 13 at 2 (citing 20 C.F.R. § 404.1504). Instead, he argues that the ALJ must still consider the evidence underlying the agency's decision. Plaintiff argues that "there are approximately 150 pages of evidence in the record related to Plaintiff's PTSD, Tr. 349–498, which the ALJ failed to discuss." *Id.* at 3.

However, from a review of the ALJ's decision, it appears that the ALJ did in fact consider those records. While the ALJ found that Plaintiff has severe PTSD, she determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations. In explaining her reasoning, the ALJ, in numerous instances, cited to the records found at AR 349–498. Based on those records, the ALJ made findings regarding Plaintiff's ability to manage finances, attend Bible College in person, care for his daughter, serve as an usher at church, go on trips, make friends, etc., AR 48–49, which factored into her determination that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in the regulations. Further, in his motion, Plaintiff does not present any arguments that the "150 pages of evidence" that the ALJ allegedly failed to discuss would have contradicted or conflicted with the ALJ's findings.

In her decision, the ALJ explicitly stated that she carefully considered "the entire record" in determining Plaintiff's RFC. AR 50. Consistent with the Tenth Circuit's

directive, this Court takes the ALJ at her word. *See, e.g.*, *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (the "general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter"); *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) ("Where the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word.") (cleaned up) (citing *Flaherty*, 515 F.3d at 1071); *Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) (where "the ALJ said he took into account 'the entire record' and 'all symptoms' in determining an RFC, '[i]t is clear this included Bradley's hand impairments because the ALJ discussed them in detail earlier in the decision'"). The ALJ's explicit references to Plaintiff's PTSD, coupled with her representation that she considered all of Plaintiff's impairments, as well as specific citations to the underlying mental health records, gives this Court sufficient reason to believe that the ALJ adequately considered the 150 pages of evidence in the record related to Plaintiff's PTSD. *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Thus, the Court finds no reversible error on this basis.

## **Conclusion**

For the reasons set forth above, the Commissioner's decision is AFFIRMED. Plaintiff's Complaint, ECF No. 1, is DISMISSED.

Dated this 28th day of August 2026.

BY THE COURT:

N. Reid Neureiter

N. Reid Neureiter
United States Magistrate Judge